UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOROTHY R. WEST,

        Plaintiff,

                                    Case Number 10-10998
v.                                  Honorable David M. Lawson
                                    Magistrate Judge R. Steven Whalen

DETROIT BOARD OF EDUCATION,
Office of Risk Management,
and DAVID SUTTON, Local 214,

        Defendants.

_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, AND
DISMISSING CASE FOR WANT OF JURISDICTION**

The plaintiff filed a *pro se* complaint in this Court alleging that she suffered discrimination and retaliation over a work-related injury at the hands of her former employer, defendant Detroit Board of Education, for which she worked as a school bus driver. The case was referred to Magistrate Judge R. Steven Whalen to conduct all pretrial proceedings. Judge Whalen conducted the pre-service screening required by 28 U.S.C. § 1915(e)(2)(B) in cases where the plaintiff seeks pauper status, and on July 2, 2010, he filed a report recommending that the complaint be dismissed with prejudice for want of subject matter jurisdiction. The plaintiff filed timely objections to the report in letter form addressing the merits of her claim but not suggesting any basis for the Court to exercise the federal judicial power over this dispute. Therefore, the Court will overrule the objections, adopt the recommendation, and dismiss the case without prejudice.

I.

Federal courts are courts of limited jurisdiction. The term "jurisdiction" in this context refers to the "classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling

within a court's adjudicatory authority." *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). The magistrate judge recommended that the Court dismiss the case without prejudice because, according to Ms. West's own description of her dispute, the case did not fall within this Court's adjudicatory competence.

Cases may be brought in federal court when they arise under federal law, such as the Constitution or federal statutes, *see* 28 U.S.C. § 1331; or when they arise between citizens of different states, *see* 28 U.S.C. § 1332. Ms. West, a Michigan citizen, states that her case against the school board arises from a dispute over the payment of workers' compensation benefits — wage loss and medical bills — flowing from a work-related injury. That is a matter of state law. The defendants are also citizens of Michigan, not "different" states.

The plaintiff has framed her case in the letters she has submitted. According to her suit papers, the plaintiff is a sixty-two-year-old female who has worked as a bus driver for the Detroit Board of Education for the past eighteen years. On March 12, 2010, she filed the present lawsuit against the Detroit School Board and David Sutton, who is a business representative of Teamsters Local 214. The plaintiff alleges that the defendants "were working together against me." Compl. at 1. She explains that in 1997 she suffered a job-related injury when she fell on ice in the school parking lot and broke her left ankle. *See* Compl. at 2; *see also* EEOC Letter to Pl., Feb. 26, 2010, Enclosure to Compl., at 4. As a result of this injury, she had to undergo several surgeries and a pin was inserted into her ankle. Clarif. Statement [dkt. # 9], at 2. This injury led to a number of other problems with the plaintiff's health that affected her legs, knees, and back. West Grievance Report, Nov. 23, 2009, Enclosure to Compl., at 9. Some of these conditions required further surgical treatment. The plaintiff, who was experiencing increasingly intense pain, was placed on potent pain

control medication, but eventually her physician advised her that, "If I did not stop driving that I would be in a wheel chair." *Id.* at 9-10. The plaintiff wanted to see the Board's medical doctor, as is apparently her right under Local 214's labor contract with the Board of Education, but for some reason she was refused access to the doctor. Compl. at 1 ("I was told two times by the Detroit Board of Education Supervisor, Carl Ingram[,] that I could not see the Board Medical Doctor."); *see also* Clarif. Statement [dkt. # 9], at 1. The plaintiff filed two grievances with her local union on that account, but she states that the union refused to investigate her grievances without any explanation.

The plaintiff proceeded to file a workers' compensation claim, which was initially denied. It is not clear whether the plaintiff is currently receiving the benefits. The plaintiff alleges in her complaint that the Board retaliated against her for her resort to the union grievance process and for filing a workers' compensation claim. She writes:

> I in turn filed a grievance, and then Mr. Ingram stated that he did not care. I filed the first grievance and that apparently made the Detroit Board of Education . . . upset, mad-angry with me. Mr. David Sutton refused to process my two grievances. I never received any calls or any responses on my grievances. There was retaliation & discrimination due to the two grievances in one month and just because I wanted to retire on December 1, 2009. I feel this was unfair employment practices directed against me. There were three ex-employees who just retired and did get to see the Board Medical Doctor when asked to see him. I feel that they treated me differently & this was unfair to me and my family.
>
> When I was refused the medical treatment by management, I was still an employee with Detroit Board of Education. Carl Ingram and the Union refused to help me with my grievances and I remained in the Union until I retired December 1, 2009. Also the staff union Representative refused to help me. I heard all about the process of filing grievances and felt that I had a case against Detroit Board of Education & Union local 214 relevant to my situation.

Compl. at 1.

Eventually, the plaintiff filed a complaint with the EEOC raising the same claims that she raises before this Court. The EEOC was "unable to conclude that the information obtained

establishes violations of the [federal] statute." Enclosure to Compl. (EEOC Dismissal and Notice of Rights), at 6. The EEOC explained that the plaintiff's complaint was "a Worker's Compensation issue," and the EEOC "does not have jurisdiction regarding Worker's Compensation or work-related injuries." *Id.* at 5.

According to the EEOC records, the plaintiff requested leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, on November 6, 2009, and the Detroit Public Schools granted that request on December 8, 2009. The plaintiff, however, denied having requested the leave, stating that she "did not ask for a medical leave[;] my Doctors took me off of my job because of my injuries." Compl. at 1. The plaintiff retired on December 1, 2009, before the defendants approved her FMLA request. She alleges in her complaint that when she retired, the Board attempted to take away her HAP insurance benefits. Objs. [dkt. # 1], at 2.

The plaintiff states the basis of her case as follows:

> I want to take this case to the Federal Courts because my rights have been violated by the Detroit Board of Education & the Union. I want to be paid for damages for the way I have been treated. They have caused all types of hardships on me and my family. If the Court looks at my case, they will find Discrimination, Retaliation and Unfair Employment Practices against me.
>
> I want to keep all of my HAP Insurance and the Detroit Board of Education should take care of medical bills for me & my husband for the rest of my life. An option would be to pay for all the injuries that have occurred from 1997 to 2009. My Doctor, Annemarie Poleck[,] says I am a very sick woman and should not be working and could be in a wheel chair due to my injuries.
> . . .
>
> My reasoning for accusations of retaliation & discrimination is due to the attempt to put me out of HAP insurance coverage because I filed for Workmen's Compensation before I retired. I needed insurance for both me and my husband who is 79 years old. My Doctor Annemarie also stated that I may need surgery on my back based on the injury that happened in the 8 or 9 years of driving the bus.

Compl. at 2.

On March 22, 2010, after granting the plaintiff's application to proceed *in forma pauperis*, the Court referred the case to Magistrate Judge R. Steven Whalen for general case management under 28 U.S.C. § 636(b). On June 7, 2010, Judge Whalen ordered the plaintiff

> to file, in writing, a more definite statement of her claims of discrimination and retaliation. On what protected class does she base her discrimination claim? Race? Gender? What facts make her believe she was discriminated against, that is, that she was treated differently from others?
>
> As for her claim of retaliation, what did she do that prompted the Defendant to retaliate? Was it her filing of a Workers' Compensation claim? What specific action did the Defendant take against her?

Order for More Definite Statement [dkt. # 8], at 1-2.

The plaintiff responded with another letter in which she reiterated her complaint that the union refused to respond to her grievances (apparently, the plaintiff never received any answers from the union regarding her two grievances) and discriminated and retaliated against her for being a "troublemaker." Clarif. Statement [dkt. # 9], at 1 ("I feel that they discriminated and retaliated against me just because I filed the two grievances and filed for workmen's compensation before I retired by attempting to put me out of HAP insurance coverage."). The plaintiff is concerned that she is "not able to pay the doctor bills. These bills came from the school job related injuries and they should have to pay the bills." *Id*. at 3.

When a plaintiff asks the court to waive fees and costs because she cannot afford to pay them, the court has an obligation to screen the case for merit and dismiss the case if it "(I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In addition to screening under section 1915, courts have "an initial and continuing obligation under

Fed. R. Civ. P. 12(b)(1) to review and dismiss cases in which the Court lacks subject matter jurisdiction." *Dekoven v. Bell*, 140 F. Supp. 2d 748, 752 (E.D. Mich. 2001).

Magistrate Judge Whalen screened the case, mindful that a *pro se* litigant's complaint is to be construed liberally, *Middleton v. McGinnis*, 860 F. Supp. 391, 392 (E.D. Mich. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and is held to "less stringent standards" than a complaint drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). On July 2, 2010, he issued a report recommending that the plaintiff's complaint be dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2) and Fed. R. Civ. P. 12(b)(1) because the plaintiff "has failed to set forth any basis for federal jurisdiction." R&R [dkt. # 10], at 1. The plaintiff filed timely objections.

II.

Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

In her letter-form objections, the plaintiff reiterates that she "was discriminated against by the Detroit Board of Education, when [she] was refused medical treatment by management when [she asked] to see the Board medical doctor at the clinic when [she] was in pain." Objs. [dkt. # 11], at 1. Apparently, after the plaintiff's supervisor at the Detroit Board of Education prohibited her from seeing the Board's doctor (it is unclear what condition the plaintiff had, who the "Board's

doctor" was, and why she preferred to see that doctor as opposed to others), the plaintiff filed a grievance on November 3, 2009, alleging that other "employees that were in the same position . . . had the chance to see the doctor." *Ibid*. She also alleges that the defendants retaliated against her for filing the second grievance on November 23, 2009, alleging the same complaint as the first grievance, as a result of which they "still refused to let [her] see the Board doctor" and, further, "took away [the plaintiff's] HAP insurance." *Ibid*. Finally, the plaintiff used her objections to protest the Court's denial of her application for appointment of counsel, stating, "I think that the federal court is violating my rights as a United States citizen" by refusing counsel and dismissing the case "when I haven't been to court or seen any judge." *Id*. at 1-2.

Unfortunately for the plaintiff, these objections do not suggest a basis upon which a federal court can address her claims. For instance, she does not say that the Board or her union treated her differently than other similarly situated employees on the basis of her gender, age, race, or national origin. She was not retaliated against for requesting or taking medical or family leave. She does not state that she was denied due process of law by a state actor, or denied benefits for speaking out on a matter of public concern, or was a member of a class that was denied the equal protection of the law. She does not say that her union failed to represent her fairly because of any of those characteristics, that is, race, gender, age, national origin. Despite Judge Whalen's requests that the plaintiff identify a *federal* claim, the plaintiff has not done so.

Although a *pro se* litigant's complaint is to be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), such complaints still must plead facts sufficient to show a redressable legal wrong has been committed. Fed. R. Civ. P. 12(b); *Dekoven*, 140 F. Supp. 2d at 755. "The leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir.

2004). The screening mandated by Congress in section 1915(e)(2) includes the obligation to dismiss civil complaints filed by prospective *pro se* filers if they "fail to state a claim upon which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *McGore v. Wigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Sua sponte* dismissal is appropriate if the complaint lacks an arguable basis when filed. *Goodell v. Anthony*, 157 F. Supp. 2d 796, 799 (E.D. Mich. 2001).

Magisrate Judge Whalen was correct when he wrote that the plaintiff's complaint was based solely on state law, which in this case is the Michigan Workers' Disability Compensation Act (WDCA), Mich. Comp. Laws § 418.101 *et seq.* The WDCA "specifies a remedial scheme for making a worker's compensation claim and for resolving disputes over benefits through a summary administrative procedure." *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 203 (6th Cir. 2004). All actions concerning a workplace injury and the amount of damages resulting from such injury fall under the WDCA. *Jones v. Gen. Motors Corp.*, 136 Mich. App. 251, 254, 355 N.W.2d 646, 648 (1984) (holding that WDCA provides exclusive remedies for work-related injuries where (1) conditions of liability under the act were present at the time of the plaintiff's injury; (2) the plaintiff is seeking to recover damages for personal injuries, and (3) the plaintiff's suit is based upon employer-employee relationship). The state law has a section making retaliation illegal. *See* Mich. Comp. Laws § 418.301(11) ("A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of

himself or herself or others of a right afforded by this act."). But that is a matter of state law, not federal law. *See Harper*, 392 F.3d at 203-05.

A complaint that a union mishandled a member's grievance might have the makings of a claim arising under federal law — section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 *et seq.* The plaintiff's statements, however, do not suggest that the union's conduct was arbitrary, discriminatory, or in bad faith. In *Vaca v. Sipes*, 386 U.S. 171, 190 (1967), the Supreme Court stated that "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining agreement is arbitrary, discriminatory, or in bad faith." 386 U.S. at 190. "Each of these wrongs is mutually independent, meaning, that 'the three named factors are three separate and distinct possible routes by which a union may be found to have breached its duty.'" *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (quoting *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994)). A union's conduct is "arbitrary" "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (citation omitted). Conduct that might amount to negligence or poor judgment will not violate the prohibition against arbitrary conduct. *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990). The plaintiff's suit papers suggest none of this, and therefore there is no federal claim stated.

This Court is unable to find a basis in the plaintiff's filings upon which it can invoke its adjudicatory authority. In other words, we have no subject matter jurisdiction over the disputes

identified by the plaintiff. Without authority to proceed, the Court must dismiss the case and leave the plaintiff to her remedies in the state courts and administrative tribunals.

III.

The Court must find that it has no subject matter jurisdiction over the action. Although the magistrate judge recommended dismissal *with* prejudice, dismissals for want of jurisdiction ordinarily are *without* prejudice. *See Costello v. United States*, 365 U.S. 265, 286 (1961) ("If the first suit was dismissed for . . . want of jurisdiction . . . the judgment rendered will prove no bar to another suit."); *Pratt v. Ventas, Inc.*, 365 F.3d 514, 522-23 (6th Cir. 2004).

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #10] is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections to the report and recommendation [dkt #11] are **OVERRULED**.

It is further **ORDERED** that the complaint is **DISMISSED without prejudice**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 4, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 4, 2010.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO